## PAINE vs. WHITE.

*School land commissioners—Presumption of law.*

Where it appeared that logs cut by A from lands belonging to the state, had been seized by the commissioners of school and university lands, and had afterwards been released to A upon his paying to the state a certain sum, it must be assumed, in the absence of any evidence to the contrary, that the commissioners required the *proper* amount to be paid, as fixed by statute, before releasing the timber; and this, although the title to said land still remained in the state, while the payment of the amount fixed by statute would have entitled A to a patent for the land. So held in a suit between one claiming under a patent of the land issued after ch. 520, Laws of 1865, took effect, and one claiming under A.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin for logs, taken by defendant (who was sheriff of said county), October 10, 1865, by virtue of a writ of attachment against the property of one Mowry, at the suit of Alden and others. Mowry claimed title under Elbridge Smith; and the plaintiff claimed under Frederick H. Smith. The question presented will sufficiently appear from the opinion below.

Verdict for the defendant; new trial denied; and plaintiff appealed from the judgment.

*Freeman & Hancock*, for appellant.

*Hooper & Bailey*, for respondent.

COLE, J.    The appellant derived title to the logs solely through Frederick H. Smith.    The latter claimed the property by virtue of his purchase from the state of the land from which the logs were cut, and the patents issued to him in the summer of 1865.    These logs, however, had been cut upon the land by Elbridge Smith, when such land belonged to the state, and had been seized, and sold to Elbridge Smith by the school land commissioners under chapter 233, Laws of 1864.    It is insisted that this sale by the school commissioners was invalid under this statute, because Elbridge Smith did not hold the certificates for the purchase of the land upon which he had committed the trespass, nor did he purchase the land of the state by paying the amount at which the land had been appraised and the fifty per cent. in addition.    It appears from the evidence in the case, that a portion of the logs had been seized by a clerk of the commissioners, because cut upon state lands, and had been re-delivered to Elbridge Smith on his paying to the state $200.    The receipts given Smith by the commissioners are not incorporated in the bill of exceptions; but we must assume, nothing to the contrary appearing, that the commissioners required the proper amount to be paid before releasing the lumber.    The commissioners were only authorized to release the logs to Elbridge Smith upon condition that he paid the minimum price at which the land had been appraised, and fifty per cent. in addition upon the appraised value.    That Elbridge Smith did not see fit to take a patent for the land cannot invalidate the sale made to him by the commissioners.

The circuit court instructed the jury that if they found that the logs cut upon the S. E. 1-4 of N. W. 1-4, sec. 5, T. 26, R.

15, were seized by authority of the school commissioners—that Elbridge Smith paid them the sum of $200, and that this was sufficient to pay for the land under section 5, chap. 233, Laws of 1864, and that in consideration thereof the logs were released and re-delivered to Elbridge Smith prior to the purchase of Frederick H. Smith in June, 1865, then, under the provisions of chap. 520, Laws of 1865, Frederick H. Smith acquired no interest in or title to said logs. If such was not the fact, then the patent conveyed to Frederick H. Smith the logs which might have been cut on the land prior to the date of the patent, as well as the land itself. In the case of the *State v. The Commissioners &c.*, 19 Wis., 237, it was held that a person purchasing land from the state after timber had been cut and removed therefrom, did not acquire, as an incident to his purchase, title to the timber thus removed, which had become personal property. This decision fully sustains the above charge of the circuit court, and is perfectly conclusive upon Frederick H. Smith's rights to the logs. Of course the law of 1865 did not in any way affect the transaction between Elbridge Smith and the commissioners occurring in 1864.

Frederick H. Smith, therefore, acquiring no title to the logs in controversy by virtue of his purchase from the state of the land from which such logs had been previously cut, could give his vendee, the plaintiff, no title.

*By the Court.*—The judgment of the circuit court is affirmed.