The State ex rel. Smith vs. Drake and others.

THE STATE EX REL. SMITH, Respondent, vs. DRAKE and others, Appellants.

*September 29 — October 25, 1892.*

*Elections: License to sell intoxicating liquors:* Mandamus.

1. The polls of an election upon the question of license or no license were opened at 9 A. M., but were closed at 9 : 30 and the ballots which had been cast were destroyed. They were again opened at 10 A. M. and were finally closed at 4 P. M. *Held,* that under sec. 1565*d,* S. & B. Ann. Stats., and sec. 29, R. S., requiring the polls to be opened at 9 A. M. and closed at sundown, the election was void.

2. *Mandamus* will not issue to compel a canvass of the votes and determination of the result of a void election.

[3. Whether *mandamus* will go to compel village trustees to perform their duties as inspectors of election, after they have been succeeded by others as such trustees, not determined.]

APPEAL from the Circuit Court for *Rock* County.

*Mandamus.* The facts are sufficiently stated in the opinion. The appeal is from a judgment awarding a peremptory writ.

For the appellants there was a brief by *Smith & Pierce*, and oral argument by *C. E. Pierce*. They contended, *inter alia*, that the terms of office of the appellants having expired they would not now be permitted to act. *Clark v. Buchanan*, 2 Minn. 346; *People ex rel. Bailey v. Supervisors*, 12 Barb. 217; *Oglesby v. Sigman*, 58 Miss. 502; *Myers v. Chalmers*, 60 id. 772; *Swain v. McRea*, 80 N. C. 111; *In re Board of Canvassers*, 12 N. Y. Supp. 174. The time allowed by law for voting having been materially shortened, the election was void. 6 Am. & Eng. Ency. of Law, 321, par. 8; *Penn District Election*, 2 Pars. (Pa.), 526; *People v. Seale*, 52 Cal. 71.

*W. G. Wheeler*, for the respondent, argued, among other things, that inspectors and canvassers having once acted, continue in such office until their duties are fully performed. Merrill, Mand. sec. 185; *People ex rel. Smith v. Schiellein*, 95 N. Y. 124; *State ex rel. Rice v. County Judge*, 7 Iowa, 186; *Simon v. Durham*, 10 Oreg. 52; *Smith v. Lawrence*, 49 N. W. Rep. (S. Dak.), 7; *Att'y Gen. v. Board of Canvassers*, 64 Mich. 607. The board of canvassers have no right to declare the election illegal. *Att'y Gen. v. Board of Canvassers*, 64 Mich. 607; *State ex rel. Gatling v. Boone*, 98 N. C. 573; *Maxwell v. Tolly*, 26 S. C. 77; *Smith v. Lawrence*, 49 N. W. Rep. (S. Dak.), 7; *People ex rel. Dean v. County Comm'rs*, 6 Col. 202; *Brown v. Board of Comm'rs*, 38 Kan. 436; *Lewis v. Comm'rs*, 16 id. 102.

Orton, J. By the petition of the relator for an alternative writ of *mandamus*, and the answer or return of the trustees of the village of Clinton, as inspectors and canvassers of the village election in April, 1892, the following facts substantially appear:

In accordance with a petition of a sufficient number of the qualified electors of said village, an election in said village was duly called, and notice thereof given, on April 5,

The State ex rel. Smith vs. Drake and others.

1892, on the question of license or no license to deal or
traffic in any spirituous, malt, or intoxicating liquors or
drinks as a beverage in said village. The trustees of said
village were by law inspectors and canvassers of said elec-
tion. There was also on that day an election held for vil-
lage officers. The polls were first opened at 9 o'clock in
the forenoon, and a number of votes received in the box on
the above question. The polls were then closed at 9:30,
and the election suspended, and the ballots cast were de-
stroyed. The polls were again opened at 10 o'clock, and
123 votes were cast against license, and 122 votes were cast
for license, and the polls were again closed at 4 o'clock in
the afternoon. The defendants, as the inspectors of said
election, deeming the election so held on said question to be
illegal, refused to canvass the votes so cast and to deter-
mine the result thereof or return the same, or to have the
same made a matter of record.

The alternative writ commands said inspectors and can-
vassers to immediately make a statement in writing of the
votes cast on said question, and certify on said statement
their determination of the result, and to leave such state-
ment and determination with the village clerk, or show
cause. The demurrer to the return was sustained, and
judgment rendered awarding the peremptory writ. Carry-
ing the demurrer to the petition, the whole case is presented
on which it may be determined whether the peremptory
writ ought to have been awarded in such a case.

It is contended by the learned counsel of the appellants
that the relator had no right to institute the proceeding,
he having no special or peculiar interest in the subject mat-
ter or result. He was a citizen and taxpayer of said village,
and a qualified elector, and voted at said election on the
question of license or no license. Being satisfied that the
relator has shown no right to the writ of *mandamus*, it is
not necessary, and perhaps improper, to pass upon this

question. It is also unnecessary to decide the question whether the writ can go to the village trustees as the inspectors of said election, they no longer holding such office, and their successors having been elected and qualified. The material question is whether the relator has shown any legal right to the writ.

1. The election was grossly illegal. The election on the question of license or no license "shall be held, and the votes canvassed by the proper canvassing board of said village, in accordance with the law governing general elections in this state." Sec. 4, ch. 521, Laws of 1889; sec. 1565d, S. & B. Ann. Stats. By the general election law (sec. 29, R. S.), "the polls of the election shall be opened at nine o'clock in the forenoon, or as soon thereafter as may be, and shall be closed at sundown." The inspectors not only violated this law in the opening and closing the polls, but they destroyed the votes cast at 9 o'clock and between that time and 9:30 o'clock, and then closed the polls and allowed no more voting until 10 o'clock, and finally closed the polls at 4 o'clock in the afternoon. An election could not be made more illegal, either by design or neglect. It was no election, within any law of this state. It would be supererogation to cite authorities on so plain a question.

2. There must be shown a clear legal right to the writ. *State ex rel. Carpenter v. Hastings*, 10 Wis. 518; *State ex rel. Spaulding v. Elwood*, 11 Wis. 17; *State ex rel. Smith v. Commissioners*, 19 Wis. 237. Neither the relator nor any one else has any legal right to have the result of such a void election determined or carried into effect. It would be illegal to canvass and determine such a vote, or return it to the village clerk.

3. The writ will not be issued if the court has no power to grant the relief asked, nor when the writ would be unavailing. *Mitchell v. Boardman*, 79 Me. 469; *State ex rel.*

*Gold v. Secrest*, 33 Minn. 381; *Tennant v. Crocker*, 85 Mich. 328; Merrill, Mand. § 75; 14 Am. & Eng. Ency. of Law, 104.

4. The writ will not issue to compel the performance of what would be unlawful (*People ex rel. Thatcher v. Hyde Park*, 117 Ill. 462), or to enforce what would be without authority of law. *Ross v. Lane*, 3 Smedes & M. 695. The court is asked to issue this high writ to command the inspectors and canvassers to carry into effect the result of an illegal election. It would be the worst and most improper use that could be made of such a writ. It would be useless, unavailing, unjust, and illegal. The writ should have been denied.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the petition on its merits.

